476 F.2d 924
 5 ERC 1187, 155 U.S.App.D.C. 168, 3
Envtl. L. Rep. 20,219
 Harriet K. BROOKS et al., Petitioners,
v.
The ATOMIC ENERGY COMMISSION and United States of America,
Respondents, Indiana & Michigan Electric Company
and Indiana & Michigan Power Company, Intervenors.
 No. 72-2177.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 14, 1973.
Decided March 8, 1973.
Rehearing Denied April 13, 1973.
 
 Lewis D. Drain, Grand Rapids, Mich., for petitioners with whom Myron M. Cherry, Chicago, Ill., was on the pleadings for petitioners.
 Jerome Nelson, Sol. U. S. A. E. C., for respondents with whom Edmund B. Clark, Atty., Dept. of Justice, was on the response for respondents.
 Gerald Charnoff, Washington, D. C., for intervenors, Indiana & Michigan Electric Co. and Indiana & Michigan Power Co., with whom Jay E. Silberg, Washington, D. C., was on the response for intervenors.
 Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and Mac-KINNON, Circuit Judge.
 PER CURIAM:
 
 
 1
 On March 25, 1969, the Atomic Energy Commission issued two provisional construction permits to the Indiana and Michigan Electric Company and the Indiana and Michigan Power Company (hereinafter Companies) for construction of Units 1 and 2 of the Donald C. Cook Nuclear Plant. In accordance with section 185 of the Atomic Energy Act[1] the construction permits for the two units stated the earliest and latest dates for the completion of construction. On October 10, 1972, the companies requested an extension of the latest permit completion date on both permits, citing bad weather, unexpected labor troubles and delay due to the redesign of certain reactor containment components. The Commission, on October 26, 1972, without notice or opportunity for hearing, entered an order extending the latest completion dates in the two construction permits as requested by the companies.[2] Petitioners, persons who live and/or own property on Lake Michigan near the construction site of the Cook nuclear facility, claim, under several different theories, that they were entitled to notice and a hearing before the Commission summarily extended the construction permit completion dates. Petitioners ask that we reverse the Commission's Order of October 26, 1972. For the reasons stated below, we grant summary reversal and order that the Commission promptly afford petitioners a hearing on the issue of the extension of the permit completion dates. We decline to order the suspension of construction as requested by petitioners under the circumstances of this case.
 
 
 2
 In order fully to appreciate petitioners' argument, it is necessary briefly to outline the action taken by the Commission with respect to the Cook nuclear facility in response to this Court's decision in Calvert Cliffs' Coordinating Committee, Inc. v. Atomic Energy Commission, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971)[3]. On June 29, 1972, the Commission published in the Federal Register a Notice of Consideration of Issuance of Facility Operating Licenses and Notice of Opportunity for Hearing.[4] This notice provided that interested persons could request a hearing:
 
 
 3
 (1) with respect to whether, considering those matters covered by appendix D to 10 CFR Part 50, the provisional construction permits should be continued, modified, terminated, or appropriately conditioned to protect environmental values; and (2) with respect to the issuance of the facility operating licenses.[5]
 
 
 4
 Petitioners, on July 28, 1972, filed a timely response to this notice requesting leave to intervene, and an opportunity for hearing, with respect to both the continuation, modification, or termination of the construction permits and the issuance of the facility operating licenses. On September 29, 1972, the Commission issued a memorandum opinion and order which stated that a hearing would be held on the applications for the issuance of operating licenses. The order admitted petitioners as parties to the operating license proceeding but inexplicably failed to advert to the noticed section C proceedings concerning the required NEPA review of the construction permits.[6]
 
 
 5
 We believe that petitioners are correct in contending that, apart from the full environmental review of the construction permits mandated by the NEPA regulations, 10 C.F.R. Part 50, App. D, Section C,[7] they should have been afforded the opportunity for a hearing on the extension of the permit completion dates. Section 189(a) of the Atomic Energy Act provides, as amended:
 
 
 6
 In any proceeding under this chapter, for the granting, suspending, revoking, or amending of any license or construction permit . . . the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding, and shall admit any such person as a party to such proceeding. . . . In cases where such a construction permit has been issued following the holding of such a hearing, the Commission may, in the absence of a request therefor by any person whose interest may be affected, issue an operating license or an amendment to a construction permit or an amendment to an operating license without a hearing, but upon thirty days' notice and publication once in the Federal Register of its intent to do so. The Commission may dispense with such thirty days' notice and publication with respect to any application for an amendment to a construction permit or an amendment to an operating license upon a determination by the Commission that the amendment involves no significant hazards consideration.[8]
 
 
 7
 The language of this section clearly seems to require that the Commission grant a hearing upon the request of any interested person in a proceeding amending a construction permit. The Commission and the Companies do not argue that the extension of the permit completion dates was not an amendment of the construction permit; they argue instead that the last two sentences of section 189(a), added to the section in 1962,[9] indicate Congressional intent to dispense with hearings in construction permit amendment proceedings in the absence of a request therefor or when the Commission determines that the amendment involves "no significant hazards consideration."
 
 
 8
 First of all, the Commission's Order of October 26, 1972, extending the permit completion dates, gives no indication whatsoever that the amendment involved no significant hazards consideration. Where one of the reasons given by the Companies in requesting an extension is the necessity for redesign of certain reactor containment components, the Commission must surely make the required significant hazards determination, and note such determination in its order, if it intends to put forward such determination as the basis for its denial of a hearing.[10] The necessity for administrative agencies to provide a statement of reasons, especially in cases such as this where the public interest demands close scrutiny of agency action, is a fundamental principle of administrative law.[11]
 
 
 9
 Secondly, and perhaps more to the point, the legislative history of the 1962 amendments indicates that it was Congress' intent to lessen the mandatory hearing requirement only when there was no request for a hearing. Both the Senate and House Reports contain the following language:
 
 
 10
 Under this plan, the issuance of amendments to such construction permits . . . would be only after a 30-day public notice and an offer of hearing. In the absence of a request for a hearing, issuance of an amendment to a construction permit . . . would be possible without formal proceedings.[12]
 
 
 11
 It is altogether untenable to argue that petitioners made no formal request for a hearing on the amendment of the construction permit, and therefore the Commission did not err in issuing the order without notice and hearing. The 30-day public notice required by section 189(a) must, of course, precede the Commission's action since the obvious purpose of such notice is to allow interested persons, such as petitioners, to decide whether they desire to exercise their statutory right and request a hearing. Indeed, the Senate and House Reports make this amply clear by stating that any regulatory action which takes place after the initial issuance of the construction permit "will take place only upon publication and sufficient advance notice to afford an interested party the opportunity to intervene."[13] Certainly logic compels the conclusion, as Congress recognized, that one may not timely request a hearing if he lacks notice that the Commission is about to take action. Especially, in a case such as this one, where petitioners had already formally expressed their interest in the continuation or modification of the construction permit by requesting intervention in the section C proceedings, elementary fairness as well as the clear language of section 189(a), demands that the Commission afford notice and an opportunity for hearing before extending the completion dates of the construction permits.
 
 
 12
 Accordingly, petitioners' motion for summary reversal is granted to the extent that the Commission is ordered promptly to afford the petitioners, and any other interested persons, an opportunity for hearing on the question of whether the Companies have shown "good cause" for extension of the permit completion dates.[14] The continuing validity of the amendment of the construction permit is made subject to the outcome of a hearing on this issue.
 
 
 
 [1]
 42 U.S.C. Sec. 2235
 
 
 [2]
 This Order by the Commission was published in the Federal Register on November 2, 1972. 37 Fed.Reg. 23373. Section 185 of the Atomic Energy Act of 1954, 42 U.S.C. Sec. 2235, provides that if construction is not completed by the latest completion date, the construction permit shall expire, and all rights thereunder be forfeited, "unless upon good cause shown, the Commission extends the completion date." The Commission's own regulations provide that all rights under the construction permit shall be forfeited if the facility is not completed by the latest completion date unless the Commission extends the completion date "upon good cause shown." 10 C.F.R. Sec. 50.55(b)
 
 
 [3]
 The Commission's regulations implementing the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. Sec. 4321 et seq., are found in 10 C.F.R. Part 50, Appendix D
 
 
 [4]
 37 Fed.Reg. 12866
 
 
 [5]
 Id. Section C of Appendix D to 10 C.F.R. Part 50 provides, in compliance with this Court's decision in Calvert Cliffs' Coordinating Committee v. AEC, supra at 1128, that a full NEPA review be conducted to determine whether construction permits issued prior to the effective date of NEPA, as were those in this case, should be continued, modified, terminated, or appropriately conditioned to protect environmental values
 
 
 [6]
 The Commission has represented in its papers before this Court, and at oral argument, that the intent of the September 29 Order was to afford petitioners a hearing on both issues, that is the continuation, modification, or termination of the construction permits and the issuance of the operating licenses. These hearings, which will be before a duly designated Atomic Safety and Licensing Board, are presently scheduled to begin sometime in the summer of 1973
 
 
 [7]
 See note 5 supra
 
 
 [8]
 42 U.S.C. Sec. 2239(a)
 
 
 [9]
 Pub.L.No. 87-615, Sec. 2, 76 Stat. 409
 
 
 [10]
 It is highly instructive to note the Commission's Draft Environmental Statement, issued in December, 1972, where it is stated at pages IV-6-7:
 The purpose of the reactor containment is to safeguard against releases of radioactivity to the environs in the highly unlikely event of a major loss of coolant accident postulated (for analytical purposes) to occur within the containment. The design criteria for the Station reactor containment and its components were reviewed and found acceptable by the staff, and were, among other things, the subject of a licensing hearing prior to the issuance of the construction permits. During the course of the staff's review of the application for an operating license for the Station, certain components designed, fabricated and installed within the containment were found not to meet the design criteria earlier found acceptable by staff during the construction permit review. Consequently, redesign and testing of these components are required in order to achieve an adequate safety system. The environmental impact of accidents occurring within the context of such a system is discussed in Section VI.
 
 
 [11]
 See, e. g., Citizens Ass'n of Georgetown v. Zoning Commission, 155 U.S.App.D.C. -, 477 F.2d 402 (1973); Greater Boston Television Corp. v. FCC, 143 U.S. App.D.C. 383, 393, 444 F.2d 841, 851 (1971); Environmental Defense Fund v. Ruckelshaus, 142 U.S.App.D.C. 74, 86-88, 439 F.2d 584, 596-598 (1971)
 
 
 [12]
 S.Rep.No.1677, 87th Cong., 2d Sess. 8 (1962), U.S.Code Cong. & Admin.News 1962, p. 2207; H.R.Rep.No.1966, 87th Cong., 2d Sess. 8 (1962)
 
 
 [13]
 Id
 
 
 [14]
 The hearing which we order in this case is in addition to the hearings required by 10 C.F.R. Part 50, Appendix D, presently scheduled for this summer, on the continution, modification, termination, or conditioning of the construction permits and the issuance of the operating licenses