**CITIZENS ASSOCIATION FOR SOUND ENERGY, Petitioner,**

v.

**U.S. NUCLEAR REGULATORY COMMISSION and United States of America, Respondents,**

**Texas Utilities Electric Co., et al., Intervenors.**

**No. 86–1169.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 5, 1986.

Decided June 26, 1987.

As Amended June 26, 1987.

Anthony Z. Roisman, with whom Daniel Warshawsky, Washington, D.C., was on the brief, for petitioner.

Charles E. Mullins, Atty., Nuclear Regulatory Commission, with whom William H. Briggs, Jr., Sol., E. Leo Slaggie, Deputy Sol., Nuclear Regulatory Commission, Peter R. Steenland, Jr., Chief, Appellate Section, and Jacques B. Gelin, Atty., Dept. of Justice, Washington, D.C. were on the brief, for respondents. Herzel H.E. Plaine, Atty., Nuclear Regulatory Commission, Washington, D.C., entered an appearance, for respondent.

Nicholas S. Reynolds, with whom Joseph B. Knotts, Jr. and Daniel F. Stenger, Washington, D.C., were on the brief, for intervenor.

Before BORK and STARR, Circuit Judges and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

McGOWAN, Senior Circuit Judge:

In this case, the Citizens for Sound Energy ("CASE") petitions this Court to review an order issued by the Nuclear Regulatory Commission ("Commission" or "NRC"). The order denied CASE's request to stay the effectiveness of an NRC Staff order amending a construction permit by the Texas Utilities Electric Company ("TUEC") and to halt further construction at the Comanche Peak Steam Electric Station ("CPSES"). Because CASE has received the type of hearing that was due and has not demonstrated that the NRC was required to initiate an entirely new construction proceeding, we affirm the holding of the Commission in its entirety.

I.

Briefly restated from the Commission's detailed Memorandum and Order, CLI–86–4, 23 NRC 113 (1986), the facts are as follows. In 1974, TUEC received a construction permit (CPPR–126) for CPSES Unit 1, to be built near Glen Rose, Texas. As extended, the construction permit was due to expire on August 1, 1985. This case arises from a wholly avoidable omission by TUEC, which failed to request that the NRC extend its CPSES Unit 1 construction permit (CPPR–126) prior to the completion date set forth in that permit. Under 10 C.F.R. § 2.109 (1986) of the Commission's regulations, the filing of a timely request for an extension of a permit keeps a construction permit in force. TUEC's failure to request an extension was detected by the NRC on January 28, 1986, during a routine document review.

On January 29, 1986, TUEC applied to the NRC Staff for an extension of CPPR–126. TUEC advised the Staff that although physical construction of the plant was essentially completed, some on-site work remained, including an effort to reinspect portions of the plant and to identify and replace any defective or non-conforming materials or systems. TUEC has ceased most construction activities at Unit 1 pending NRC action on the permit application. 23 NRC at 115–16.

On January 31, 1986, CASE, an intervenor in the CPSES operating licensing proceeding, filed a pleading with the Commission seeking: (1) the imposition of a civil penalty against TUEC for construction activities at CPSES Unit 1 between August 1 and January 29, (2) a definitive order directing TUEC to file an application for a new construction permit, and to cease all construction activities at CPSES Unit 1, (3) a determination that significant hazards considerations existed in any extension of the construction permit, and (4) a hearing before the Atomic Safety and Licensing Board Panel ("ASLBP") on the request to extend the construction permit. 23 NRC at 116.

While this matter was pending before the Commission, the NRC Staff issued a finding under the National Environmental Policy Act ("NEPA") of no significant environmental impact relating to the extension of CPPR–126. See 51 Fed.Reg. 4834 (Feb. 7, 1986). On February 10, 1986, the NRC Staff issued the requested extension of CPPR–126 after finding that the extension involved no "significant hazards considera-

tions." *See* Joint Appendix ("J.A.") at 108–13.

On March 13, 1986, the Commission (1) denied CASE's request for a halt to construction and the institution of a new construction permit proceeding; (2) denied CASE's request for a stay of the Staff's extension of CPPR–126; (3) rejected CASE's view that significant health hazards considerations were involved in the extension of CPPR–126; (4) referred CASE's request for enforcement action to the Staff for consideration under 10 C.F.R. § 2.206 (1986); and (5) referred CASE's request for a hearing to the Chairman of ASLBP for appointment of a hearing board to rule on the hearing request and conduct any necessary hearings in accordance with Subpart G of 10 C.F.R. Part 2 (1986). 23 NRC at 116–17. Petitioner immediately sought review of this decision. On April 24, 1986, Judges Edwards and Starr of this Court issued a *per curiam* order denying Petitioner's request for a stay, concluding that Petitioner failed to supply "sufficiently concrete proof that the absence of a stay will directly cause irreparable harm." This appeal followed.

On appeal before this Court, Petitioner argues that there are three principal errors in the NRC order. First, Petitioner contends that the NRC erred as a matter of law in refusing to grant CASE a hearing on request prior to acting on the proposed amendments, even if there were no significant hazards considerations involved. Second, Petitioner contends that the NRC

erred in failing to find that TUEC had forfeited its construction permit by allowing the permit to expire without timely request for an extension. Thus, CASE argues that the only way in which TUEC could continue construction would be to file a new construction permit application instituting a *de novo* construction permit proceeding. Third, Petitioner contends that the NRC erred in concluding that there were no significant hazards considerations associated with the extension of CPPR–126. Br. of Petitioner at 16–17. We address each of these contentions in turn.

## II.

### A. Request for a Pre-Amendment Hearing

█ Petitioner contends first that the NRC erred in failing to grant its request for a prior hearing on TUEC's request for an extension of its construction permit. Petitioner's argument rests on the premise that Section 189(a) of the Atomic Energy Act ("AEA")[1] requires a prior hearing on an application for a construction permit amendment whenever a party has requested a hearing without regard to a finding by the NRC that the application does not involve "significant hazards considerations." Br. of Petitioner at 17–25. Respondents counter that the AEA permits a "no significant hazards consideration" amendment to a construction permit to issue without prior notice and hearing. Br. of Respondents at 44. Fortunately, we need not decide this difficult and complicated legal issue.[2]

---

**1.** Section 189(a) of the AEA provides, in pertinent part, as follows:

In any proceeding under this Act, for the granting, suspending, revoking, or amending of any license or construction permit, ... the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding, and shall admit any such person as a party to such proceeding.... In cases where such a construction permit has been issued following the holding of such a hearing, the Commission may, in the absence of a request therefor by any person whose interest may be affected, issue ... an amendment to a construction permit ... without a hearing, but upon thirty days' notice and publication once in the Federal Register of its intent to do so. The Commission

may dispense with such thirty days' notice and publication with respect to any application for an amendment to a construction permit ... upon a determination by the Commission that the amendment involves no significant hazards consideration. 42 U.S.C. § 2239(a)(1).

**2.** This Court is, of course, aware of recent interpretations of, and amendments to, Section 189(a). For example, Respondents argue that the reasonableness of the NRC's view is supported by the fact that it has been viewed as a correct interpretation by a majority of this Court. *See Union of Concerned Scientists v. Atomic Energy Comm'n,* 499 F.2d 1069, 1084 n. 36 (D.C.Cir.1974) ("an amendment can be made without opportunity for a hearing if the [NRC] determines that it 'involves no significant haz-

CASE did not seek the hearing to which it might have been entitled under Section 189 (a), but instead attempted to take advantage of a fortuitous circumstance to raise arguments relevant to TUEC's application for an operating license.

The construction permit amendment at issue here involves only an extension of time to complete construction. The AEA provides that the NRC may grant an extension of time for "good cause" shown. 42 U.S.C. § 2235. Thus, CASE would be entitled only to a hearing to determine whether TUEC had shown good cause for the extension, i.e., whether there is a reason for the delay and whether TUEC should be granted additional time.[3] In its request for a hearing, however, CASE did not seek to present evidence relevant to this "good cause" determination but instead requested a hearing on issues wholly irrelevant to this determination.

We find therefore that CASE is not entitled to present evidence which is not relevant directly to the reason for TUEC's delay or to the question of whether addi-

---

ards consideration.'"). However, Respondents do not argue that the Commission or this Court has ever applied this standard directly to a construction permit amendment.

Petitioner argues that this Court's decision in *Brooks v. Atomic Energy Commission,* 476 F.2d 924 (D.C.Cir.1973) (*per curiam*) advances the position that CASE is entitled to a hearing before the NRC acts on the proposed amendment to CPPR–126, even if no significant hazards considerations are involved. *See* Br. of Petitioner at 18. In *Brooks,* the Commission extended a construction permit without making a "no significant hazards considerations" finding and without notice and hearing. *Id.* at 927. This Court held that action was contrary to Section 189(a) of the AEA, concluding that the plain language of that section "clearly seems to require that the Commission grant a hearing upon the request of any interested person in a proceeding amending a construction permit." *Id.* at 926.

Petitioner argues further that it has a statutory entitlement to a preextension hearing under this Court's decision in *Sholly v. United States Nuclear Regulatory Comm'n,* 651 F.2d 780, 787 (D.C.Cir.1980), *rehearing en banc denied,* 651 F.2d 792 (1981), *cert. granted,* 451 U.S. 1016, 101 S.Ct. 3004, 69 L.Ed.2d 387 (1981), *vacated and remanded,* 459 U.S. 1194, 103 S.Ct. 1170, 75 L.Ed.2d 423, *vacated and remanded as moot,* 706 F.2d 1229 (D.C.Cir.1983). *See* Br. of Petitioner at 19–20. In *Sholly,* this Court held that under the plain language of Section 189(a), the NRC could not make an operating license amendment immediately effective where there was a hearing request, even if the amendment involved no significant hazards considerations.

While *Sholly* was pending before the Supreme Court, Congress amended the AEA to overrule this Court's *Sholly* decision. The Congressional amendments to the AEA did not modify Commission policy regarding construction permits. Rather, Congress established a complex process which the NRC must follow for authorizing issuance of *operating license amendments,* even where there is a no significant hazards consideration finding, if it wishes to dispense with a preamendment hearing. Pub.L. No. 97–415, 96

Stat. 2073 (Jan. 4, 1983). *See* 1982 U.S.Code Cong. & Ad.News 3592, 3598–3600, 3606–3609. In response to the *"Sholly* legislation," the NRC promulgated regulations governing the substantive standards for determining whether an operating license amendment involved "no significant hazards considerations," and the procedures for giving public notice, soliciting written comments and holding post-issuance hearings. 48 Fed.Reg. 14864, 14873 (April 6, 1983).

The *Sholly* decision is no longer of precedential value. In addition, although the *Sholly* legislation is silent on the subject of construction permit amendments, the necessity for legislation was more compelling in cases involving operating license amendments. *See* Final Procedures and Standards on No Significant Hazards Considerations, Final Rule, 51 Fed.Reg. 7747 (March 6, 1986).

Finally, Petitioner relies on this Court's recent decision in *San Luis Obispo Mothers for Peace v. NRC,* 751 F.2d 1287 (D.C.Cir.1984), *vacated in part and rehearing en banc granted,* 760 F.2d 1320 (D.C.Cir.1985), *affirmed,* 789 F.2d 26 (D.C. Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 330, 93 L.Ed.2d 302 (1986), to support the general proposition that the NRC is required to hold a hearing before extending a construction permit. Br. of Petitioner at 20–21. In *San Luis Obispo,* this Court held that the extension of the term of a low-power operating license constituted a license "amendment" within the meaning of Section 189(a) for which the Commission must grant an opportunity for a hearing. 751 F.2d at 1312.

3. The Licensing Board has already issued a Memorandum and Order admitting CASE as an intervening party to this proceeding and has begun reviewing TUEC's request for an extension of CPPR–126. *See Texas Utilities Electric Company, et al.* (Comanche Peak Steam Electric Station, Unit 1), LBP–86–528–02 (May 2, 1986); LBP–86–36A; slip op. NRC (October 30, 1986). If in these post-amendment construction permit hearings CASE succeeds in showing that the NRC cannot demonstrate "good cause" for the permit extension, the remaining work will be halted.

tional time should be granted. *See* Br. of Petitioner at 35. Specifically, CASE attempts to present evidence that (1) TUEC is not technically qualified or competent, (2) there is no reasonable assurance that TUEC will follow the Commission's regulations in completing the construction or that TUEC will implement a proper quality assurance program, and finally, (3) TUEC cannot meet the architectural and engineering commitments it has made. Br. of Petitioner at 26 n. 26, 35–44, 48–52. CASE asserts further that the licensing procedure is inadequate to satisfy these concerns because it addresses only whether the plant should be operated and not whether construction should be completed. *Id.* at 35 n. 22. CASE contends that the "good cause" hearing it was afforded after the construction amendment was granted is inadequate because it was not permitted to argue that the delay was caused by TUEC's violation of the Commission's regulations. *See* Reply Br. of Petitioners at 8 n. 4, Attachment C, at 6–7; *Texas Utilities Electric Company, et al.* (Comanche Peak Steam Electric Station, Unit 1), 24 NRC 397 (1986).

We believe that the above evidence which CASE wants to present is relevant to the quality of the ongoing construction but is not relevant to the question of whether additional time should be granted to complete the construction. This evidence is more appropriately being presented by CASE in the ongoing proceedings to determine whether TUEC should be granted an operating license. *See, e.g., Texas Utilities Electric Company* (Comanche Peak Steam Electric Station, Units 1 and 2), LBP–84–55; 20 NRC 1646 (1984); LBP–83–81, 18 NRC 1410 (1983) *reconsideration denied,* LBP–84–10, 19 NRC 809 (1984). We are not persuaded, therefore, that the issues CASE seeks to raise are distinct from the issue of whether construction should be allowed to continue. *See* Br. of Petitioner at 35 n. 22; Reply Br. of Petitioner at 4.

Additionally, if CASE believed that the mere construction of the plant were a safety hazard, it could have moved the Commission pursuant to 10 C.F.R. § 2.206 (1986) to use its enforcement power to suspend construction. *See* 23 NRC at 116. Had it done so, it would not have been confined by the "good cause" standard. We do not accept CASE's general assertion that the proceeding under Section 2.206 is, or would have been, necessarily a "grossly less meaningful" or unduly "complex and difficult" procedure than a hearing under Section 189(a). *See* Br. of Petitioner at 35–36 n. 22; Reply Br. of Petitioner at 6. To the contrary, the 2.206 procedure merely requires an individual to write the NRC, alleging violation of an NRC regulation or AEA section, and state the facts upon which that allegation is made. The Commission then refers the petition to the appropriate staff office, whose Director must either grant the petition or explain its denial in writing. *See* 10 C.F.R. § 2.206(b) (1986).

Obviously the mere existence of Section 2.206 does not displace any statutory right to a hearing provided by Section 189. Yet CASE suggests that, unless this Court overturns the Commission's extension of the construction permit extension date, it will have no other remedy to challenge TUEC's construction activities. Reply Br. of Petitioner at 6–7. However, CASE is currently a party to the CPSES operating licensing proceeding which is considering the closely related issues at stake here and, to this point in time, has prevailed in that the NRC has refused to license Comanche Peak and has required TUEC to implement numerous actions to demonstrate that the plant can operate without undue risk to public health and safety. *See Texas Utilities Electric Company* (Comanche Peak Steam Electric Station, Units 1 and 2), *supra.*

In summary, CASE has been granted a "good cause" hearing. The determination made as a result of that hearing is now on appeal to the full Commission. If CASE feels that this hearing is inadequate, it may appeal the Commission's determination on that issue. We conclude that CASE has received the type of hearing that was due, and that the NRC was not required to grant CASE a hearing in which it could present evidence properly presented in the other hearings it has been afforded. The

NRC did not err in refusing to grant CASE's request for a hearing on issues relating to operating licenses in the context of the extension of a construction permit.[4]

Finally, we emphasize that our decision does not constitute approval of TUEC's past construction activities or serve as a prejudgment of any issue in the operating license proceeding. As the NRC concedes, whether TUEC will eventually be allowed to operate the facility is an entirely different question from whether to extend the completion date of the construction permit. *See* Br. of Respondents at 37–38. The decision to allow operation of the plant is subject to complete administrative review, with public participation in the on-going license proceedings. Until TUEC demonstrates that it has constructed the plant in accordance with NRC regulations, the NRC will not license the plant. *See* 10 C.F.R. § 50.57 (1986).

We are aware of Petitioner's important concern that the inertia generated by completion of the construction of a nuclear power plant, with the massive investment it represents, could, in some circumstances, sway the licensing authority from properly carrying out its mandate to protect the public safety. *See Porter County Chapter of the Izaak Walton League of America, Inc. v. NRC,* 606 F.2d 1363 (D.C.Cir.1979). However, we believe while that contention may have practical force in some instances, "a court may not transform a projected tendency to inertia into a presumption of infidelity to duty." *Id.* at 1370; *see also Power Reactor Development Co. v. International Union of Electrical Workers,* 367 U.S. 396, 415, 81 S.Ct. 1529, 1538, 6 L.Ed.2d 924 (1961).

**B. The Extension of the Construction Completion Date**

■ Petitioner argues next that the NRC erred when it failed to require TUEC to apply for a new construction permit to replace the expired permit. Br. of Petitioner at 25. In its analysis of this contention,

the Commission addressed whether TUEC's failure to make a timely application for an extension prior to the expiration date of its construction permit had the effect of causing a complete forfeiture of the permit, such as to preclude the issuance of an extension and to require the initiation of an entirely new construction proceeding. 23 NRC at 117. The Commission resolved this question in the negative, interpreting Section 185 of the AEA, 42 U.S.C. § 2235, as not requiring such a complete forfeiture. *See also Texas Utilities Electric Company, et al.* (Comanche Peak Steam Electric Station, Unit 1), 24 NRC, 397, 400 (1986).

In reaching its conclusion, the Commission examined the language and legislative history of Section 185 of the AEA. Section 185 provides in pertinent part:

> The construction permit shall state the earliest and latest dates for the completion of the construction or modification. Unless the construction or modification of the facility is completed by the completion date, the construction permit shall expire, and all rights thereunder be forfeited, unless upon good cause shown, the Commission extends the completion date. 42 U.S.C. § 2235.

The plain language of Section 185 permits the Commission to extend a completion date for "good cause." There is no language specifying that the expiration of the construction permit automatically effects forfeiture of the permit, or that the Commission is then barred from an application to extend the latest construction date.

TUEC's failure to file a timely renewal request was unique to the Commission's experience. There was no case law to aid in the interpretation of Section 185 as it applied to the present situation. *See* 23 NRC at 118. The Commission did, however, analyze case law interpreting parallel provisions of the Communications Act of 1934, 47 U.S.C. § 319(b). As the Commission recognized, Congress appears to have modelled the relevant language of Section 185 on the provision of the 1934 Communi-

---

**4.** We therefore need not address Petitioner's third contention that the NRC erred in concluding that there were no significant hazards con-

siderations associated with the extension of CPPR–126.

cations Act which governs the issuance of radio station construction permits by the Federal Communications Commission ("FCC"). *See Proposed Amendments to the Atomic Energy Act of 1946: Hearings on S. 3323 and H.R. 8862 Before the Joint Comm. on Atomic Energy,* 83d Cong., 2d Sess. 116 (1954) (Representative Hinshaw), *reprinted in* II Legislative History of the Atomic Energy Act of 1954, at 1635, 1751–56.

Radio station construction permit cases hold generally that the expiration of the original construction permit does not preclude the FCC from renewing a permit, and that a radio construction permit is not forfeited until the agency affirmatively declares it so. *See, e.g., Mass Communications, Inc. v. FCC,* 266 F.2d 681 (D.C.Cir. 1959), *cert. denied,* 361 U.S. 828, 80 S.Ct. 76, 4 L.Ed.2d 71 (1959); *MG–TV Broadcasting Co. v. FCC,* 408 F.2d 1257 (D.C.Cir. 1968). While not controlling, the conclusions of the Commission comport with the approach taken by the FCC. We believe that the Commission reasonably employed this Court's earlier analysis of § 319(b) of the Communications Act to aid in the interpretation of Section 185 of the AEA, and to determine that Section 185 did not impose automatic forfeiture.

The conclusion that no automatic forfeiture occurs is further supported by Section 2.109 of the Commission's regulations. 10 C.F.R. § 2.109 (1986). That Section provides, in pertinent part, as follows:

> If, at least thirty (30) days prior to the expiration of an existing license authorizing any activity of a continuing nature, a licensee files an application for a renewal or for a new license for the activity so authorized, the existing license will not be deemed to have expired until the application has been finally determined. 10 C.F.R. § 2.109.

Thus, assuming that TUEC had filed a timely application for the extension of the construction permit expiration date (apparently as every other licensee facing CP expiration has previously managed to do), CPPR–126 would have automatically continued in force while TUEC attempted to demonstrate "good cause" for the requested extension. *See also* 5 U.S.C. § 558(c).

Overall, the Commission's decision to extend the completion date of CPPR–126 by license amendment without instituting a full-scale *de novo* construction permit is a proper interpretation and application of its organic statute, the AEA. The Supreme Court has held that an agency's interpretation of its statute is entitled to deference. *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "[I]f the statute is silent or ambiguous with respect to [a] specific issue [within the general compass of the statute], the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782 (footnote omitted).

This Court has set forth certain guidelines for adhering to the mandate of *Chevron:*

> In determining whether an agency's interpretation represents a reasonable accommodation of conflicting statutory purposes, a reviewing court must determine both whether the interpretation is arguably consistent with the underlying statutory scheme in a substantive sense and whether "the agency considered the matter in a detailed and reasoned fashion." *Rettig v. Pension Benefit Guaranty Corp.,* 744 F.2d 133, 151 (D.C.Cir. 1984) (*quoting Chevron,* 467 U.S. at 865, 104 S.Ct. at 2793).

*See also General Elec. Uranium v. U.S. Dept. of Energy,* 764 F.2d 896, 905 (D.C. Cir.1985).

Applying these principles to the issue of the extension of CPPR–126, we find that the Commission has adopted a permissible interpretation of the AEA that is "arguably consistent with the underlying statutory scheme in a substantive sense," and has fully and fairly considered this issue "in a detailed and reasoned fashion." We cannot agree with Petitioner's contention that, under *Chevron* and *Rettig,* the NRC's interpretation of this aspect of its statute is entitled to no deference whatsoever. Reply Br. of Petitioner at 16.

## III.

In the unusual circumstances of this case, we do not decide the question of whether the Commission is required by Section 189(a) to grant CASE's request for a hearing. CASE has received the type of hearing that was due, and the NRC was not required to grant CASE a hearing in which it could present evidence properly presented in other hearings that it already has been afforded. In addition, CASE has not demonstrated that the NRC was required to initiate an entirely new construction proceeding. Therefore, in the absence of clear statutory authority, and because of the limited nature of this case, this Court will not order the broad hearing sought by CASE.

For the foregoing reasons, the decision of the Nuclear Regulatory Commission is, in all respects,

*Affirmed.*