**UNION OF CONCERNED SCIENTISTS, Petitioner,**

v.

**UNITED STATES NUCLEAR REGULATORY COMMISSION and United States of America, Respondents,**

**Nuclear Utility Backfitting and Reform Group, Intervenor.**

**No. 88–1561.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 31, 1989.

Decided July 25, 1989.

 placed above.

Diane Curran, with whom Andrea C. Ferster, Anne Spielberg, and Dean Tousley, Washington, D.C., were on the brief, for petitioner.

Steven F. Crockett, Attorney, U.S. Nuclear Regulatory Com'n, with whom Peter R. Steenland, Jr., Chief, Appellate Section, Jacques B. Gelin and Sarah P. Robinson, Attys., U.S. Dept. of Justice, Washington, D.C., and William C. Parler, Gen. Counsel, Rockville, Md., William H. Briggs, Jr., Sol., E. Leo Slaggie, Deputy Sol., and Rochelle M. Gunner, Atty., U.S. Nuclear Regulatory Com'n, Washington, D.C., were on the brief, for respondents.

Nicholas S. Reynolds, with whom Daniel F. Stenger and James W. Moeller, Washington, D.C., were on the brief, for intervenor. Barton Z. Cowan, Pittsburgh, Pa., and Robert W. Bishop, for amicus curiae Nuclear Management and Resources Council, Inc., were also on the brief for intervenor.

Before MIKVA, SILBERMAN, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

The Union of Concerned Scientists ("UCS") petitions for review of the U.S. Nuclear Regulatory Commission's ("Commission") "backfit rule," 10 C.F.R. § 50.109, 53 Fed.Reg. 20,603 (1988), revised in response to this court's remand in *Union of Concerned Scientists v. Nuclear Regulatory Commission*, 824 F.2d 108 (D.C.Cir. 1987) (*"UCS I"*).

In *UCS I*, this court vacated the Commission's 1985 backfit rule on the ground that it permitted costs to be considered in the establishment of the "adequate-protection" standard, in violation of section 182(a) of the Atomic Energy Act ("Act"), 42 U.S.C. § 2232(a). On remand and after notice and comment, the Commission promulgated a revised rule that made explicit its policy that costs were not to be considered either when backfitting is necessary to ensure adequate protection of public health and safety or when the Commission defines or redefines the adequate-protection standard. See 10 C.F.R. § 50.109(a)(4).

We hold that the Commission's revised backfit rule survives petitioner's facial challenge. In doing so, we of course do

not foreclose petitioner from future challenges to the Commission's application of the rule.

## I.

 "Backfitting" refers to the imposition of new or modified safety requirements on nuclear power plants previously licensed for construction or operation. *See UCS I*, 824 F.2d at 109. In 1985, in response to mounting criticism of its then-existing backfit rule, the Commission modified its standard for determining when a backfit would be required, adding a cost-benefit test to the then-existing requirement that the backfit substantially increase protection to health and safety. *See* 10 C.F.R. § 50.109(a)(3) (1986); *UCS I*, 824 F.2d at 110–12. The 1985 rule included three exceptions to the cost-benefit requirement where the backfit was necessary either to bring a facility into compliance with rules or licenses or to ensure adequate protection of public health and safety. *See* 10 C.F.R. § 50.109(a)(4)(i), (ii), (ii) n. 3 (1986).

UCS petitioned for review of the 1985 rule, and in *UCS I* this court held that "the Act precludes the NRC from taking costs into account in establishing or enforcing the level of adequate protection, but allows the NRC to consider costs in devising or administering requirements that offer protection beyond that level." *UCS I*, 824 F.2d at 114. We accordingly rejected UCS's contention that the Act forbids the Commission from ever considering economic costs in the backfitting process. *Id.* at 109; *see also id.* at 121 (Williams, J., concurring).

We nevertheless vacated the 1985 rule in its entirety, even though we found that "[w]e conceivably could read the terms of this rule to comply with the statutory scheme," 824 F.2d at 119, because the Commission, in its Statement of Considerations accompanying the rule, "allow[ed] the consideration of costs in the *establishment* of the adequate-protection standard[,] * * * [a] consideration * * * forbidden by the statute." *Id.* We also vacated a chapter of the Commission's Staff manual ("Chap-

ter 0514" or "chapter"), which was challenged by UCS and which contained internal agency procedures for implementing the rule, because the chapter was "inextricably intertwined" with the provisions of the final rule. *Id.* at 120.

On June 6, 1988, after notice and comment, the Commission issued a revised rule in response to this court's remand in *UCS I*. The 1988 rule expressly stated the Commission's policy that "[i]n defining, redefining, or enforcing [the Act's] statutory standard of adequate protection, the Commission will not consider economic costs." 53 Fed.Reg. 20,604 (1988). In addition, the Commission reasserted its authority to "impose additional safety requirements not needed for adequate protection and to consider economic costs in doing so." *Id.*

The structure of the 1988 rule is substantially the same as that of the 1985 rule. The heart of the 1988 rule is paragraph (a)(3), which imposes a cost-benefit test for backfits generally:

> *Except as provided in paragraph (a)(4) of this section,* the Commission *shall require* the backfitting of a facility *only* when it determines, based on the analysis described in paragraph (c) of this section, that there is a substantial increase in the overall protection of the public health and safety or the common defense and security to be derived from the backfit and that the direct and indirect costs of implementation for that facility are justified in view of the increased protection.

10 C.F.R. § 50.109(a)(3) (emphasis added).

As with the 1985 rule, the 1988 rule contains three exceptions to the use of the cost-benefit test of paragraph (a)(3). The major difference between the two rules is that the revised rule makes clear that the cost-benefit test is not to be used to establish the level of protection defined as adequate. The first exception is where "a modification is necessary to bring a facility into compliance with a license or the rules or orders of the Commission * * *." § 50.109(a)(4)(i). The second exception is where "regulatory action is necessary to ensure that the facility provides adequate

protection to the health and safety of the public * * *." § 50.109(a)(4)(ii). The third exception is where "regulatory action involves defining or redefining what level of protection to the public health or safety * * * should be regarded as adequate." § 50.109(a)(4)(iii). For each of the three exceptions, the cost-benefit test of paragraph (a)(3) does not apply.

Another difference is that the 1988 rule explicitly states that "the Commission shall *always* require the backfitting of a facility if it determines that such regulatory action is necessary to ensure that the facility provides adequate protection to the health and safety of the public and is in accord with the common defense and security." § 50.109(a)(5) (emphasis added).

Finally, the 1988 rule, like its 1985 predecessor, provides a nonexhaustive list of factors to consider when conducting a cost-benefit analysis under paragraph (a)(3), including the "[p]otential change in the risk to the public from the accidental off-site release of radioactive material," the "[i]nstallation and continuing costs associated with the backfit, including the cost of facility downtime or the cost of construction delay," "[t]he estimated resource burden on the NRC associated with the proposed backfit and the availability of such resources," and "any other information relevant and material to the proposed backfit." § 50.109(c).

## II.

Petitioner mounts a facial challenge to the revised backfit rule and to the revised chapter of the Commission's manual that guides the Commission's technical staff in implementing the rule. Specifically, petitioner argues that (1) the revised backfit rule suffers from the same fatal flaws as the 1985 rule; (2) the cost-benefit analysis permitted by the revised rule has a "built-in bias" by allowing cost considerations to dominate; (3) the revised rule violates public participation rights; and (4) the Commission's method for performing cost-benefit analysis is arbitrary and capricious. We discuss each of these arguments in turn.

### A. *Compliance with the Act and with UCS I*

Petitioner's primary challenge to the Commission's revised backfit rule is that, notwithstanding the added provisions, the rule fails to constrain the Commission from injecting cost considerations in determining whether a backfit is necessary to provide adequate protection to the public. Petitioner urges that the revised rule, to pass muster under the Act and *UCS I*, must include a set of "objective criteria" to distinguish safety improvements that are necessary for adequate protection of the public (cost-independent standards) and those that go beyond adequate protection (cost-dependent standards).

As a threshold matter, the parties dispute the proper standard for reviewing the Commission's interpretation of the Act. We need not decide this question, however, because this case does not involve a question of statutory construction; any distinction would accordingly not make a difference in this case. This court in *UCS I* found that, regardless of the standard of review, the Act's meaning was clear. *See* 824 F.2d at 113–14. Because this court's *UCS I* interpretation of the Act now governs this case, the only question is whether the rule at issue violates that interpretation or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).

On the merits of petitioner's facial challenge, we find the Commission's revised backfit rule in full accord with the Act and with *UCS I*. In *UCS I*, this court construed the Act to establish a two-tiered approach to backfitting: the Commission may consider costs when imposing backfits that go beyond the provision of adequate protection, but may not consider costs when backfits are required to ensure adequate protection or in determining what constitutes adequate protection. *See* 824 F.2d at 118. The Commission's revised rule explicitly states that backfit decisions will be cost-independent where "regulatory action is necessary to ensure that the facility provides adequate protection to the health and safety of the public and is in

accord with the common defense and security," 10 C.F.R. § 50.109(a)(4)(ii), and where "the regulatory action involves defining or redefining what level of protection to the public health and safety or common defense and security should be regarded as adequate," *id.* § 50.109(a)(4)(iii); *see also id.* § 50.109(a)(5). These changes make clear that economic costs may not be considered when action is necessary to restore a plant to the requisite level of adequate protection or when the level of protection must be increased to be considered adequate. Consequently, we hold that these provisions, on their face, are sufficient to implement the two-tiered regulatory structure mandated by this court's interpretation of the Act in *UCS I.* *See* 824 F.2d at 114–18.

Petitioner takes comfort in our remark in *UCS I* that the 1985 rule "is an exemplar of ambiguity and vagueness" and "does not speak in terms that constrain the Commission from operating outside the bounds of the statutory scheme," 824 F.2d at 119. Petitioner essentially argues that, because the 1988 rule is substantially the same as the 1985 rule, it suffers from the same flaws and must therefore also be vacated.

This argument must fail, however, not only because it is based on the false premise that the 1988 rule is legally identical to the 1985 rule, but also because it misreads our opinion in *UCS I.* The remainder of the paragraph containing the remark quoted above directs the Commission only to "adopt a rule that tracks the requirements of the Atomic Energy Act," 824 F.2d at 119. We then reiterated the two-tiered regulatory structure and concluded that "[a]ny future rule adopted by the Commission should explicitly recognize and comply with this statutory scheme," *id.* at 120. Because the Commission's revised rule tracks the requirements and the two-tiered regulatory scheme identified by this court in *UCS I,* the Commission has fully complied with our instructions on remand. Moreover, the specific defect with the 1985 rule was its vulnerability to impermissible interpretations, such as the one found in the Commission's Statement of Considerations accompanying the 1985 rule. *See id.*

at 119; *id.* at 122 (Williams, J., concurring). In revising the rule to preclude the impermissible interpretation and remove the ambiguities identified in *UCS I, see* 53 Fed. Reg. at 20,608–09 (discussing the scope and meaning of the exceptions to the rule), the Commission has done precisely what this court asked it to do.

■ Petitioner's claim that the revised rule must contain a set of objective standards for determining what constitutes "adequate protection" finds no support in this court's opinion in *UCS I.* Indeed, the court narrowly instructed the Commission merely to "be more faithful to the statutory provisions it has the responsibility to apply" and to "track[ ] the requirements of the Atomic Energy Act." 824 F.2d at 119. Because the relevant provisions of the Act itself do not define "adequate protection," we cannot say that the Commission, by declining to define by rulemaking when a given level of safety is "adequate," has violated our instruction in *UCS I* to track the requirements of the Act.

■ In addition, we note that the regulatory requirements for reactor licensing, *see* 10 C.F.R. Part 50, implicitly constitute a significant body of "background" standards for the imposition of backfit requirements, since backfits necessary to ensure license compliance are specifically exempted from the cost-benefit test of the rule, *see* 10 C.F.R. § 50.109(a)(4)(i). As the Commission explained when issuing the rule:

> The threshold decision in considering a proposed backfit, and very often the only decision that need be made, is not whether adequate protection is at stake but rather whether the facility is in compliance with the Commission's requirements and the licensee's written commitments.
>
> * * * [C]ompliance with such regulations and guidance may be presumed to assure adequate protection as a minimum.

53 Fed.Reg. at 20,605–06. The "compliance" exception, *see* 10 C.F.R. § 50.109(a)(4)(i), will therefore typically provide a rational and circumscribed basis

for precluding the Commission from considering costs in backfit decisions. Where the presumption of adequate protection due to regulatory compliance is "overcome by, for instance, new information which indicates that improvements are needed to ensure adequate protection," 53 Fed.Reg. at 20,-606, the other exceptions to the cost-benefit requirement, see 10 C.F.R. § 50.109(a)(4)(ii), (iii), mandate a cost-independent assessment of the safety significance of the proposed backfit before the Commission introduces, if it does at all, cost considerations into the decisionmaking process.

■ We also agree with the Commission that the "adequate protection" standard may be given content through case-by-case applications of its technical judgment rather than by a mechanical verbal formula or set of objective standards, as urged by petitioner. See 53 Fed.Reg. at 20,605–06. Due to changes in technology and variations in circumstances, "[t]here does not exist, and cannot exist, at least not yet, a generally applicable definition of 'adequate protection' which would guard against every possible misuse of the phrase. * * * Congress did not define 'adequate protection,' nor did it command the Commission to define it." 53 Fed.Reg. at 20,606. Indeed, petitioner concedes that "[t]he concept of what constitutes adequate protection is an evolving standard that must keep pace with developing information and with improvements in nuclear power technology over time." Petitioner's Reply Brief at 3 (emphasis added). We elect not to second-guess the Commission's discretion in "mak[ing] sound judgments about what 'adequate protection' requires, by relying on expert engineering and scientific judgment, acting in light of all relevant and material information." 53 Fed.Reg. at 20,-606. As the Supreme Court has long recognized:

[P]roblems may arise in a case which the administrative agency could not reasonably foresee, problems which must be solved despite the absence of a relevant general rule. * * * Or the problem may be so specialized and varying in nature as to be impossible to capture within the boundaries of a general rule. In those

situations, the agency must retain power to deal with the problems on a case-by-case basis if the administrative process is to be effective. * * * [T]he choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency.

SEC v. Chenery Corp., 332 U.S. 194, 202–03, 67 S.St. 1575, 1580, 91 L.Ed. 1995 (1947) (citation omitted); see also NLRB v. Bell Aerospace Co., 416 U.S. 267, 294–95, 94 S.Ct. 1757, 1771–72, 40 L.Ed.2d 134 (1974). The determination of what constitutes "adequate protection" under the Act, absent specific guidance from Congress, is just such a situation where the Commission should be permitted to have discretion to make case-by-case judgments based on its technical expertise and on all the relevant information. Cf. Siegel v. Atomic Energy Commission, 400 F.2d 778, 783 (D.C.Cir. 1968) (the Act is "virtually unique in the degree to which broad responsibility is reposed in the administrative agency, free of close prescription in its charter as to how it shall proceed in achieving the statutory objectives").

In short, in seeking a set of objective criteria for determining what level of protection is adequate, petitioner is asking the Commission to do something that neither the Act nor this court's prior decision in UCS I requires it to do. The Commission's reasoning supports the revised rule, and, given the deference accorded agency rulemaking under the APA and the presumption of administrative regularity, we conclude that the rule, on its face, complies with the Act and with UCS I.

■ Finally, in a last-ditch attempt to assail the Commission's revised rule, petitioner points to two recent applications of the rule that, we are told, demonstrate that the rule remains vulnerable to arbitrary applications and impermissible interpretations. Even assuming arguendo that we were to find that these instances were properly before this court and constitute specific misapplications of the rule, however, we find they suggest, at most, only that the rule might in the future be misap-

plied. Such arguments are of course inappropriate here, where the rule is being challenged on its face. *See, e.g., Massachusetts v. NRC,* 856 F.2d 378, 384 (1st Cir. 1988).

**B.** *Bias in the Commission's Cost–Benefit Analysis*

■ Petitioner also argues that the Commission's rule is facially invalid because, in cases where cost-benefit analysis is permitted, the rule maximizes cost considerations at the expense of safety and is therefore impermissibly biased against backfitting. Because this contention rests on an erroneous reading of the rule, we hold that it is without merit.

Petitioner maintains, and there is no dispute, that Congress intended public safety to be a paramount concern of the Commission, *see UCS I,* 824 F.2d at 114–18, and that the Act does not permit the Commission to establish a cost-benefit formula that is inherently weighted against desirable safety improvements. Petitioner claims, however, that the rule fails to list certain "benefits" of imposing backfits—such as the large benefit associated with avoidance of an accident—even though it lists many "costs" of a backfit, including such allegedly trivial costs as the cost of Commission resource expenditures. But this contention, while true, ignores the fact that the regulation on its face also provides that the elements of the cost-benefit analysis are not limited by the enumerated factors, but rather are to include "any other information relevant and material to the proposed backfit," 10 C.F.R. § 50.109(c). Moreover, the chief "benefit" listed in the rule, the "[p]otential change in the risk to the public from the accidental off-site release of radioactive material," § 50.109(c)(3), is sufficiently broad to encompass most, if not all, of petitioner's concerns.

Petitioner's argument is therefore grounded on a flawed reading of the relevant regulation. Not every conceivable cost or benefit is intended to be identified by the rule, and the rule explicitly states that the factors listed in section 50.109(c) are neither mandatory nor exhaustive. Ac-

cordingly, we reject petitioner's argument that the revised rule is, as a matter of law, unlawfully biased.

**C.** *Public Participation Rights*

■ Petitioner's third challenge to the rule is that it impermissibly deprives the public of its right to participate in backfit decisions. Specifically, UCS argues that the rule and the internal procedures accompanying the rule in Chapter 0514 violate: (1) section 189(a) of the Act, 42 U.S.C. § 2239(a), which grants public hearing rights during licensing proceedings; (2) the Administrative Procedure Act's requirement of reasoned agency decisionmaking based on public comment, 5 U.S.C. §§ 553, 554; and (3) the due process clause of the Fifth Amendment.

We note at the outset that because the rule itself does not mention public participation rights, petitioner's claim necessarily rests on our review of the Commission's internal guidelines contained in Chapter 0514. In *UCS I,* we vacated Chapter 0514 without reaching the merits of petitioner's objections, because the procedures in the chapter were "inextricably intertwined" with the provisions of the final rule. 824 F.2d at 120.

The intervenor raises a jurisdictional objection to petitioner's challenge, arguing that Chapter 0514 establishes internal agency staff procedures, not substantive regulations, and is thus not a reviewable final rule or order. *See Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981). We agree.

Although we vacated the portion of the Commission's manual that related to the backfit rule in *UCS I,* we did so on the ground that the *substance* of the manual, like the rule itself, was inconsistent with the Act. *See,* 824 F.2d at 120. The issue raised by petitioner in this case, by contrast, relates not to the substance of the manual, which tracks the requirements of the revised rule, but to the *procedures* established by the manual. Accordingly, we must as a threshold matter determine whether the manual, as a compendium of

the Commission's procedures, is reviewable.

At the outset, we note that this court has jurisdiction to review "all final orders" of the Commission made reviewable by section 189(b) of the Act, *see* 28 U.S.C. § 2342(4). Section 189(b) of the Act provides that "[a]ny final order entered in any proceeding of the kind specified in [section 189(a)] shall be subject to judicial review * * *." 42 U.S.C. § 2239(b). Section 189(a), in turn, provides in relevant part:

> In any proceeding under this chapter, for the granting, suspending, revoking, or amending of any license or construction permit, * * * and in any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees, * * * the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding, * * *.

42 U.S.C. § 2239(a)(1) (Supp.1988).

Petitioner contends that the backfit procedures specified in Chapter 0514 constitute section 189(a) "proceedings." We hold that this claim must fail, however, because backfit hearings do not fall within any of the specified enumerated categories of section 189(a). *See San Luis Obispo Mothers for Peace v. NRC*, 751 F.2d 1287, 1314 (D.C.Cir.1984) ("[i]f a particular form of Commission action does not fall within one of the eight categories set forth in the section, no hearing need be granted by the Commission"), *aff'd*, 789 F.2d 26 (D.C.Cir.) (en banc), *cert. denied*, 479 U.S. 923, 107 S.Ct. 330, 93 L.Ed.2d 302 (1986). In short, because the Commission's Chapter 0514 is not a "final order" establishing a "proceeding" under section 189(a), we have no jurisdiction to review the procedures it establishes.

In particular, we find that Chapter 0514 provides merely internal staff guidelines regarding the revised backfit rule; it establishes no substantive rights or obligations and is not legally enforceable. *Cf. UCS v. NRC*, 711 F.2d 370, 382 (D.C.Cir.1983) (agency rule was a "binding norm to which licensees must conform" and "inherently substantive," and therefore did not fall

within the APA exception for "procedural rules" and "statements of policy," 5 U.S.C. § 553(b)(A)). Thus, under settled principles of reviewability, we conclude that Chapter 0514 is not reviewable. *See Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981).

 Finally, we note in passing that our finding of unreviewability does not leave petitioner's concern for public participation entirely unanswered. Petitioner acknowledges that Chapter 0514 does not affect its right to participate in a proceeding to impose a backfit by means of a proposed rulemaking or license amendment once the process reached that stage. Additionally, under 10 C.F.R. § 2.206 (request for enforcement action) and § 2.802 (petition for rulemaking), petitioner and other affected persons may at any time petition the Commission to impose a backfit. *See Citizens Association for Sound Energy v. NRC*, 821 F.2d 725, 729 (D.C.Cir.1987). Although petitioner argues that this remedy is insufficient, claiming that the public has a right to comment in advance of a specific final decision, it fails to point to any applicable statutory support for such a claim. Accordingly, we have no basis for imposing such a procedural requirement on the Commission. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).

Because we find Chapter 0514 unreviewable, we need not address the questions whether the procedures established therein deprive the public of its hearing rights under § 189(a) of the Act, or whether such a deprivation would violate the due process clause of the Fifth Amendment, as petitioner claims.

## D. *Arbitrary and Capricious*

Petitioner's final argument is that the method used to perform a cost-benefit analysis is arbitrary and capricious, because (1) the Commission excludes certain potential benefits of proposed backfits; (2) the Commission fails to explain its reliance on probabilistic risk assessment ("PRA"); and (3) in performing a cost-benefit analy-

sis, the Commission assigns arbitrary monetary values to benefits. Each of these challenges is without merit.

Petitioner's first contention is premised on the notion that the rule unequivocally excludes many of the benefits associated with a proposed backfit. As discussed above, however, the rule on its face does not exclude such benefits. If in some future case the Commission omits an important element in its cost-benefit analysis, petitioner remains free to challenge that decision as arbitrary and capricious. *See Massachusetts v. NRC*, 856 F.2d at 384. Until then, this court must presume that the Commission will faithfully adhere to its rule and apply it in good faith.

Petitioner's second contention is also based on a false premise. Petitioner argues that the rule permits the "unqualified reliance" on an allegedly faulty methodology known as PRA. PRA involves the use of estimated probabilities of certain events and their consequences to quantify the risks of a given activity. But because the rule does not mention PRA, much less mandate "unqualified reliance" on the technique, petitioner's categorical attack on its use is premature. The rule's reference to the "[p]otential change in the risk to the public from the accidental off-site release of radioactive material," 10 C.F.R. § 50.109(c)(3), may be read to include PRA, but the broad language of that provision can also be read to encompass an overall assessment of the "benefit" to society of imposing a backfit. Moreover, the Commission has indicated that "given the state of the art in quantitative safety assessment," it does not intend to make backfitting decisions wholly on the basis of such techniques. 53 Fed.Reg. at 20,606. The most petitioner can therefore argue is that the rule does not *prohibit* the use of PRA and that the Commission could conceivably misapply PRA in some future case, but such an argument is of course insufficient to sustain petitioner's facial challenge. *See Massachusetts v. NRC*, 856 F.2d at 384.

Petitioner's final contention is that the revised rule assigns arbitrary dollar amounts to various intangible benefits of proposed backfits. Although this argument does not appear to have been raised below, even if we were to consider it, petitioner's contention reduces to a claim that the use of cost-benefit analysis is itself arbitrary and capricious, for the touchstone of cost-benefit analysis is the assignment of "arbitrary" monetary values to intangible benefits (such as the worth of a human life). But cost-benefit analysis, when used properly, is an accepted regulatory tool; indeed, this court in *UCS I* acknowledged that, where safety requirements are not necessary for adequate protection, "the NRC may take economic costs into account, even to the extent of conducting strict cost-benefit analysis," 824 F.2d at 114. We must accordingly reject this argument as well.

### III.

UCS's primary argument is that the Commission's revised backfit rule is unlawful because it does not comply with the two-tiered regulatory structure of the Act established in *UCS I*. We find, however, that the Commission has specifically responded to the weaknesses of the 1985 rule by clarifying the ambiguities identified by this court. We accordingly conclude that the rule is facially valid. Petitioner's argument that there remains the *possibility* of future misapplication of the rule is insufficient to require facial rejection of the rule. Because we also reject petitioner's other arguments, the petition for review is

*Denied.*