920 F.2d 50
 287 U.S.App.D.C. 119, 118 P.U.R.4th 512
 UNION OF CONCERNED SCIENTISTS, Petitioner,
v.
UNITED STATES NUCLEAR REGULATORY COMMISSION and the United
States of America, Respondents,
Nuclear Management and Resources Council, Inc. and Edison
Electric Institute, Intervenors.
 No. 89-1617.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 5, 1990.
Decided Nov. 30, 1990.
 
 Diane Curran, with whom Dean R. Tousley, was on the brief, for petitioner.
 Carole F. Kagan, Sr. Atty., Nuclear Regulatory Com'n, with whom William C. Parler, Gen. Counsel, John F. Cordes, Jr., Sol., and E. Leo Slaggie, Deputy Sol., Nuclear Regulatory Com'n, and Robert L. Klarquist, Atty., Dept. of Justice, were on the brief, for respondents.
 Jay E. Silberg, with whom Thomas A. Baxter, Mindy A. Buren, Robert W. Bishop, and Peter B. Kelsey were on the brief, for intervenors Nuclear Management and Resources Council, Inc. and Edison Elec. Institute.
 Before: SILBERMAN, HENDERSON, and RANDOLPH, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SILBERMAN.
 SILBERMAN, Circuit Judge:
 
 
 1
 The Union of Concerned Scientists (UCS) petitions for review of a Nuclear Regulatory Commission (NRC) rule heightening the specificity requirements for pleadings filed by parties seeking to intervene in licensing hearings, 54 Fed.Reg. 33,168 (Aug. 11, 1989). UCS contends that the rule on its face violates the Atomic Energy Act, 42 U.S.C. Sec. 2011 et seq., the National Environmental Policy Act (NEPA), 42 U.S.C. Sec. 4321 et seq., and the Administrative Procedure Act (APA), 5 U.S.C. Sec. 551 et seq. We deny the petition.
 
 I.
 
 2
 An understanding of UCS' objection to the NRC rule requires a brief summary of the NRC licensing process. Utilities seeking to construct or operate a nuclear power plant must file a license application and detailed health, safety, and environmental submissions with the NRC. 10 C.F.R. Sec. 50.34 (1990). The NRC Staff then studies the applicant's submissions and compiles a Safety Evaluation Report (SER) and the environmental documents required by NEPA. Interested parties may request or move to intervene in a hearing within 30 days of the filing of the application. 10 C.F.R. Sec. 2.714(a) (1990); Sec. 2.102(d)(3) (1990). Shortly after making such a request or motion, and well before the NRC Staff completes the SER or NEPA documents and releases them publicly, a party must file a pleading listing its "contentions," that is, what it seeks to litigate in the hearing. 10 C.F.R. Sec. 2.714(b) (1990).
 
 
 3
 Any party that timely files at least one admissible contention may participate in the hearing. Previously, prospective intervenors had only to set forth the bases for contentions with "reasonable specificity." 10 C.F.R. Sec. 2.714(b) (1989) J.A. 45. The new rule perceptibly heightens this pleading standard. It requires that contentions consist of "a specific statement of the issue of law or fact to be raised or controverted," that they detail the alleged facts or opinion on which the prospective intervenor will rely, and that they "show that a genuine dispute exists with the applicant on a material issue of law or fact." 10 C.F.R. Sec. 2.714(b)(2). As the NRC recognized that this showing would have to be made before the NEPA reports are released, the rule further provides that with respect to environmental issues "the petitioner shall file contentions based upon the applicant's environmental report [and] ... can amend those contentions or file new contentions if there are data or conclusions in the ... [NEPA reports] that differ significantly from the data or conclusions in the applicant's document." 10 C.F.R. Sec. 2.714(b)(2)(iii). Intervenors who had raised issues in a timely fashion and who had been admitted to the hearing thus may incorporate as of right new evidence raised in the SER and the NEPA reports bearing on those issues.
 
 
 4
 In promulgating the new rule, the NRC also made clear that it had not changed its 17 year-old rule with respect to late-filed contentions. See 54 Fed.Reg. 33,172 (Aug. 11, 1989). Under that prior rule, parties advancing untimely contentions are not automatically granted access to the hearing even if their contentions otherwise pass muster under the NRC admissibility criteria; instead, they are admitted on the basis of a discretionary, five-factor balancing test. 10 C.F.R. Sec. 2.714(a).[1] This test applies fully even in cases where contentions are filed late only because the information on which they are based was not available until after the filing deadline; the NRC has ruled that while the first factor--good cause for filing late--is by definition met in such circumstances, the other four factors, if implicated, permit the denial of intervention in a given case. See Duke Power Co. (Catawba Nuclear Station, Units 1 and 2), CLI-83-19, 17 NRC 1041, 1045-50 (1983) ("Catawba ").
 
 II.
 
 5
 The sole question presented by UCS' petition for review is whether the new contentions rule is on its face "not in accordance with law," 5 U.S.C. Sec. 706(b). UCS does not, however, contend that the heightened pleading requirement, standing alone, would be illegal. Its position is rather that the new rule's operation in conjunction with the longstanding late-filing rule denies it the ability fully to litigate challenges to licenses, and that the combination of the rules therefore facially violates the Atomic Energy Act, the APA, and NEPA. It argues that the NRC may not apply the final four factors of the late-filing balancing test whenever there is good cause for the late filing due to the unavailability of information, but must instead admit as of right contentions filed late for this reason.
 
 
 6
 The NRC claims that this argument is actually an out of time challenge to the late-filing rule and the interpretation of it in Catawba and that we accordingly lack jurisdiction to hear UCS' petition. To be sure, the preponderance of UCS' brief is devoted to criticism of the late-filing rule. UCS, however, also argues that even if the late-filing rule itself is consistent with Section 189(a), the heightened specificity requirements of the new rule push the NRC over the statutory edge by foreclosing a previously available circumvention of the late-filing rule. Under the old, more lenient, pleading standard, parties could file timely contentions incorporating evidence and issues frequently appearing in SERs and NEPA documents but not disclosed in the license application; many of these "anticipatory" contentions, as the NRC concedes (NRC Br. at 27-28), would be eliminated by the new rule's specificity requirements. We consequently have jurisdiction to entertain UCS' claims and so we turn to the merits.[2]
 
 
 7
 In order to prevail on its claim that the NRC is bound to conduct its proceedings in the particular manner it advocates, UCS must point to a statute specifically mandating that procedure, for "absent constitutional constraints or extremely compelling circumstances" courts are never free to impose on the NRC (or any other agency) a procedural requirement not provided for by Congress. Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978). UCS focuses on Section 189(a) of the Atomic Energy Act, which provides that "[i]n any proceeding under this chapter, for the granting, suspending, revoking, or amending of any license ... the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding, and shall admit any such person as a party to such proceeding." 42 U.S.C. Sec. 2239(a).
 
 
 8
 The only term in this section that UCS implicitly seeks to interpret is the word "hearing." As the Act itself nowhere describes the content of a hearing or prescribes the manner in which this "hearing" is to be run, UCS' challenge to the NRC's procedural rules faces a steep uphill climb.[3] We are, of course, obliged to defer to the operating procedures employed by an agency when the governing statute requires only that a "hearing" be held. See, e.g., American Trucking Ass'ns v. United States, 627 F.2d 1313, 1319 n. 20, 1321 (D.C.Cir.1980) (noting that such "operating procedures" fall "uniquely within the expertise of the agency"); see also Richardson v. Wright, 405 U.S. 208, 209, 92 S.Ct. 788, 789, 31 L.Ed.2d 151 (1972); FCC v. Pottsville Broadcasting Co., 309 U.S. 134, 143-44, 60 S.Ct. 437, 441-42, 84 L.Ed. 656 (1940); see generally Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). And we have in addition long noted the increased deference due NRC procedural rules because of the "unique degree 'to which broad responsibility is reposed in the [Commission], free of close prescription in its charter as to how it shall proceed in achieving the statutory objectives.' " BPI v. Atomic Energy Comm'n, 502 F.2d 424, 428 n. 3 (D.C.Cir.1974) (quoting Siegel v. Atomic Energy Comm'n, 400 F.2d 778, 783 (D.C.Cir.1968)); see also Cities of Statesville v. Atomic Energy Comm'n, 441 F.2d 962, 977 (D.C.Cir.1969) (en banc) (quotation omitted) (the NRC "should be accorded broad discretion in establishing and applying rules for ... public participation").
 
 
 9
 UCS nonetheless argues that the operation of the NRC procedural rules denies it a hearing within the "plain meaning" of Section 189(a). It claims that the NRC may not exclude a late-filed contention raising "information" first brought to light by the staff documents on grounds (contained in its five-factor balancing test) that the late-filing party's interest will be protected by other means, that the party's participation is not necessary to develop a sound record, that the party's interest is represented by other parties to the hearing, or that the party's participation will delay the proceeding. This argument is based on the following syllogism: (1) under Section 189(a), any party has a right to a hearing on any material issue; (2) much material information bearing upon a licensing decision will not be apparent before the SER and NEPA documents are completed and made public and so cannot be raised in a timely fashion with the specificity the NRC now demands; and therefore (3) by subjecting late-filed contentions incorporating this information to a balancing test for admission, the late-filing rule and Catawba's interpretation of it illegally place at the NRC's discretion that to which parties have an absolute right under Section 189(a). It seems rather creative to draw all of this from the "plain meaning" of the word "hearing." UCS maintains, however, that all three logical steps are drawn from our interpretation of the section 189(a) "hearing" in Union of Concerned Scientists v. NRC, 735 F.2d 1437 (D.C.Cir.1984), cert. denied, 469 U.S. 1132, 105 S.Ct. 815, 83 L.Ed.2d 808 (1985) ("UCS I "). We disagree--both with UCS' construction of that case and with UCS' logic.
 
 
 10
 In UCS I, we invalidated as in violation of Section 189(a) an NRC rule which eliminated from all licensing hearings a specific issue--the adequacy of emergency preparedness plans--that the NRC conceded was material to a licensing decision. See 735 F.2d at 1443. We found "no basis in the statute or legislative history for NRC's position that Congress granted it discretion to eliminate from the hearing material issues in its licensing decision." Id. at 1447. UCS I thus stands for the proposition that Section 189(a) prohibits the NRC from preventing all parties from ever raising in a hearing on a licensing decision a specific issue it agrees is material to that decision. But it does not do anywhere near the service petitioner asks of it.
 
 
 11
 In the first place, UCS I does not establish, as UCS contends, that any party raising a material issue has a right to intervene.. UCS I held only that the NRC may not preclude all parties from raising a specified material issue. Indeed, we have long recognized that Section 189(a) "does not confer the automatic right of intervention upon anyone," BPI, 502 F.2d at 428, and that the NRC may exclude a party from a hearing if, for example, another party has fully presented a material issue identical to the one the excluded party seeks to raise. See Cities of Statesville, 441 F.2d at 977. UCS' view of Section 189(a) would compel the NRC to reopen a hearing to anyone and everyone filing a contention based on a new issue brought to light by the SER or NEPA documents, regardless of how many parties sought to intervene on the same issue. We think that is an unreasonable interpretation of the statute, and that the NRC may employ each of the four factors in its late-filing test to limit the admission of late-filing parties raising the same issue.
 
 
 12
 Petitioner also is mistaken in reading UCS I to require that a licensing hearing embrace anything new revealed in the SER or the NEPA documents and in contending that the NRC consequently may not employ the balancing test to preclude consideration of new "information." UCS I dealt with a matter conceded by all parties to be a material issue, see 735 F.2d at 1445-46, whereas much of what those reports will bring to light will, it seems to us, not be new issues but new evidence on issues that were apparent at the time of application. As we recently recognized, new information about nuclear power plant safety arising between the time of the initial application and the commencement of operations does not necessarily present a new issue: "[d]uring the lengthy construction process, new and safety-significant information about plant design, siting, or operation may arise. These intervening developments may in turn raise new issues about the conformity of the plant with the Act...." Nuclear Information and Resource Serv. v. NRC, 918 F.2d 189, 194-95 (D.C.Cir.1990) (emphasis added). Information raised in the environmental reports does not amount to a new material "issue" simply because it adds marginal weight to the case of an opponent or a proponent of a license; the reports instead raise a new "issue" only when the argument itself (as distinct from its chances of success) was not apparent at the time of the application. Although the concepts of new issues and new evidence are analytically distinct, we recognize that in practice they can converge--the demarcation line may depend on how the "issue" is stated. Still, whether an actual new "issue" is raised is a matter for the NRC to determine in the first instance and is reviewed deferentially. Cf. San Luis Obispo Mothers for Peace v. NRC, 789 F.2d 26, 30 (D.C.Cir.) (en banc), cert. denied, 479 U.S. 923, 107 S.Ct. 330, 93 L.Ed.2d 302 (1986); Carstens v. NRC, 742 F.2d 1546, 1555, 1559-60 (D.C.Cir.1984), cert. denied, 471 U.S. 1136, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985).
 
 
 13
 Whatever the statutory restraints on the NRC's authority to exclude material issues from its hearings, the Commission can certainly adopt a pleading schedule designed to expedite its proceedings. See BPI, 502 F.2d at 428. In this instance, the Commission has adopted such a schedule, properly balancing two competing concerns: the risk that a private party's new evidence on a previously apparent issue will be excluded and the need adequately to delineate the scope of the licensing hearing. When a staff document reveals new material, the NRC undoubtedly must take that new material into account internally and courts will certainly consider it in determining on review whether a licensing decision is supported by substantial evidence or is arbitrary and capricious because the NRC failed to take into account a relevant factor. But we think it unreasonable to suggest that the NRC must disregard its procedural timetable every time a party realizes based on NRC environmental studies that maybe there was something after all to a challenge it either originally opted not to make or which simply did not occur to it at the outset.[4] We see nothing in the statute that guarantees all private parties the right to have the staff studies as a sort of pre-complaint discovery tool. The NRC, it seems to us, is permitted to employ considerations such as whether a party's participation "may reasonably be expected to assist in developing a sound record" or will "delay the proceeding"--the third and fifth factors in its late-filing test--in assessing whether to admit to a hearing a late-filing party seeking to raise only new evidence contained within the environmental reports.
 
 
 14
 The NRC rules of course could be applied so as to prevent all parties from raising a material issue. But "[e]ven assuming arguendo that we were to find that these instances ... [would] constitute specific misapplications of the rule ... they [would] suggest, at most, only that the rule might in the future be misapplied. Such arguments are of course inappropriate here, where the rule is being challenged on its face." Union of Concerned Scientists v. NRC, 880 F.2d 552, 558-59 (D.C.Cir.1989). Any application of the rule to prevent all parties from raising material issues which could not be raised prior to release of the environmental reports will be subject to judicial review, and the validity of the rules as there applied can be addressed at that time.[5]
 
 III.
 
 15
 UCS also argues that the rules violate the APA and NEPA by not allowing full notice and comment on the environmental reports. The short answer to the APA challenge is that UCS does not cite any express provision of the APA which the rules contravene--it refers only to 5 U.S.C. Sec. 553, which applies solely to rulemaking and is hence inapplicable to NRC licensing hearings. In any event, UCS' reliance upon cases holding that the APA gives interested parties the right to full notice and comment on Staff positions in adjudications is misplaced; in those cases, the agency completely refused to disclose its Staff's position, see, e.g., Independent U.S. Tanker Owners Comm. v. Lewis, 690 F.2d 908, 923-24 (D.C.Cir.1982); U.S. Lines, Inc. v. FMC, 584 F.2d 519, 533-34 (D.C.Cir.1978), whereas under the challenged rules the NRC discloses the environmental reports before the hearing, and parties to that hearing then have a right to object to or use all information contained in those reports bearing on issues the parties had timely raised. To the extent that an issue could not be raised before the release of the reports, there might possibly then be an argument that the notice and comment requirement would mandate admittance of a late-filed contention raising that issue, but we again decline to anticipate that case.
 
 
 16
 UCS' NEPA arguments fare no better. While NEPA clearly mandates that an agency fully consider environmental issues, it does not itself provide for a hearing on those issues. See, e.g., Aberdeen & Rockfish R. Co. v. SCRAP, 422 U.S. 289, 305, 319, 95 S.Ct. 2336, 2348, 2355, 45 L.Ed.2d 191 (1975). As a result, NEPA does not alter the procedures agencies may employ in conducting public hearings, see Vermont Yankee, 435 U.S. at 548, 98 S.Ct. at 1214; it instead merely prevents agencies from excluding as immaterial certain environmental issues from those hearings.[6] The NRC has not attempted to do this, and as its procedural rules do not facially violate the Atomic Energy Act or the APA, they also are consistent with NEPA.
 
 
 17
 * * * * * *
 
 
 18
 The NRC rules to which UCS objects may be employed consistent with the Atomic Energy Act, the APA, and NEPA. Although hypothetical applications of these rules might transgress the statutory provisions upon which petitioner relies, we think it inappropriate to anticipate them in resolving petitioner's facial challenge to the rules. The rules accordingly are valid on their face, and the petition for review is
 
 
 19
 Denied.
 
 
 
 [1]
 The five factors are:
 (i) Good cause, if any, for failure to file on time.
 (ii) The availability of other means whereby the petitioner's interest will be protected.
 (iii) The extent to which the petitioner's participation may reasonably be expected to assist in developing a sound record.
 (iv) The extent to which the petitioner's interest will be represented by existing parties.
 (v) The extent to which the petitioner's participation will broaden the issues or delay the proceeding.
 
 
 [10]
 C.F.R. Sec. 2.714(a)
 
 
 [2]
 Because we hold that even the combined effect of the new contentions rule and the late-filing rule does not violate the Atomic Energy Act, the APA, or NEPA, we need not specifically address UCS' arguments that the permissibility of the Catawba doctrine itself is properly before us because the NRC reopened the issue in the proceedings below and that that doctrine alone transgresses each of these statutes. UCS' claim concerning the combined effect of the rules necessarily incorporates its claim concerning the late-filing rule alone. We can conceive of no analytic basis on which petitioner's "combined" claim could fail but its attack on the Catawba doctrine alone could succeed. For that reason, we do not have to determine whether we have jurisdiction independently to entertain the latter challenge
 
 
 [3]
 As we have previously noted, it is an open question whether Section 189(a)--which mandates only that a "hearing" be held and does not provide that that hearing be held "on the record"--nonetheless requires the NRC to employ in a licensing hearing the procedures designated by the Administrative Procedure Act for formal adjudications, 5 U.S.C. Secs. 556, 557. See Union of Concerned Scientists v. NRC, 735 F.2d 1437, 1444-45 n. 12 (D.C.Cir.1984), cert. denied, 469 U.S. 1132, 105 S.Ct. 815, 83 L.Ed.2d 808 (1985); see generally United States v. Florida East Coast Ry. Co., 410 U.S. 224, 234-38, 93 S.Ct. 810, 815-17, 35 L.Ed.2d 223 (1973) (APA formal rulemaking procedures are not required where the substantive statute provides for a "hearing" without specifying that the hearing be held "on the record"). Because the rules do not on their face contravene any of the formal procedures, we need not resolve this issue here
 
 
 [4]
 A party may, of course, petition the NRC to modify a license in light of such new evidence. See 10 C.F.R. Sec. 2.206 (1990)
 
 
 [5]
 At oral argument, counsel for UCS suggested that we must anticipate that case now because UCS will otherwise be "chilled" from attempting to participate in NRC hearings and from challenging NRC decisions in court. Given the proliferation of litigation on NRC decisions and the expansiveness of the NRC hearing process, see generally Vermont Yankee, 435 U.S. at 557, 98 S.Ct. at 1218, we find this novel argument unpersuasive
 
 
 [6]
 Contrary to UCS' claim, our decision in Calvert Cliffs' Coordinating Comm. v. Atomic Energy Comm'n, 449 F.2d 1109 (D.C.Cir.1971), does not establish that NEPA confers on parties an absolute right to a hearing on the documents that Act requires agencies to compile. That case held only that an agency may not consistent with NEPA limit its consideration of environmental issues to those actually raised by parties, see id. at 1117-18, and does not speak to whether a party has a right to a hearing on all environmental issues irrespective of its failure to comply with an agency's perfectly legal procedural timetables